FILED

2025 Jan-08  AM 10:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **J. CORBIN DOUGLAS TUNSTALL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.: 2:24-cv-01504-RDP** |
| | } | |
| **WILLIAM E. DONALDSON** | } | |
| **CORRECTIONAL FACILITY, et al.,** | } | |
| | } | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the Motion to Dismiss filed by Defendants Alabama Department of Corrections, William E. Donaldson Correctional Facility, and Commissioner John Q. Hamm (collectively, "Defendants"). (Doc. # 9). The Motion has been fully briefed.[1] (Docs. # 9, 10, 13). After careful consideration, the court concludes that Defendants' Motion (Doc. # 9) is due to be granted in part and denied in part.

### I.      Background

Plaintiff J. Corbin Tunstall ("Plaintiff") has filed suit against Defendants, asserting claims of race discrimination and retaliation. (Doc. # 1). Plaintiff is an African-American male who was employed by Defendant the Alabama Department of Corrections ("ADOC") at Defendant William E. Donaldson Correctional Facility ("Donaldson"). (*Id.* ¶¶ 4, 13). Defendant John Q. Hamm ("Commissioner Hamm") is the ADOC Commissioner and held that position at all relevant times related to Plaintiff's allegations. (*Id.* ¶ 4). Beginning January 2, 2013, Plaintiff was employed at

---

[1] Movants, Defendants, have not filed a Reply. According to Exhibit B of the court's Initial Order (Doc. # 11), the movant's reply brief shall be filed no later than five (5) calendar days after the date on which the opponent's responsive brief is filed. (*Id.* at 24). Because the responsive brief was filed on December 14, 2024, the deadline for a reply brief has passed. Defendants did not file a reply, therefore, the court proceeds as if the Motion (Doc. # 9) has been fully briefed.

Donaldson as a Correctional Officer and then later served as a Sergeant from December 2, 2020 until February 9, 2022. (*Id.*). In his Complaint, Plaintiff alleges that on October 13, 2021, an incident occurred with an inmate at Donaldson. (*Id.* ¶ 14). Plaintiff contends that that the inmate refused to go to the medical unit for treatment and was combative in his refusal. (*Id.*). Plaintiff alleges that under instructions from duty supervisors, Plaintiff had the inmate placed in an observation room, hoping that the inmate would calm down. (*Id.*). According to Plaintiff, while in the observation room, the inmate became unresponsive and later died while being treated by the medical staff. (*Id.* ¶ 15). Plaintiff alleges that the medical staff discovered that the inmate had been stabbed and died of the stab wound. (*Id.*).

Plaintiff alleges that following this incident on October 13, 2021, he was placed on mandatory leave and that this leave depleted all of his annual leave, his sick leave was not honored, and he was not paid while on mandatory leave. (*Id.* ¶ 16). According to Plaintiff, on February 7, 2022, he resigned from his employment with Donaldson and then on February 9, 2022, he was terminated by Commissioner Hamm and informed that his termination was due to his not obtaining medical treatment for the inmate who was allegedly stabbed by another inmate. (*Id.* ¶ 13, 17).

Plaintiff alleges that Shaun Mechalske ("Mechalske"), who is a white sergeant-duty officer, was also involved in the incident with the inmate, and he was given the same instruction to place the inmate in the observation room until he calmed down. (*Id.* ¶ 18). Plaintiff further alleges that Mechalske was neither placed on mandatory leave nor terminated at the time Plaintiff was terminated for the incident with the inmate. (*Id.*).

On February 10, 2022, one day after his termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 8). Plaintiff alleges that after his EEOC Charge was filed, and "[a]fter realizing that [Plaintiff] was

not the sergeant in charge and [that] a possible mistake was made, . . . the Department of Corrections made further investigations and took corrective measures." (*Id.* ¶ 20). Plaintiff further alleges that these later actions were only taken "[t]o remove the appearance of discrimination." (*Id.*). Based on the allegations in his Complaint, the court understands that the "subsequent actions" Plaintiff refers to involve the firing of Mechalske. (*Id.*). Plaintiff contends that by the time these actions were taken, he had already "suffered emotionally [and] economically," that "a total violation of his rights pursuant to Title VII of the Civil Right Act of 1964 as amended (Title VII) 42 U.S.C. sec 2000e, et seq. had already occurred," and that the "subsequent firing of the other person involved did not remedy or correct the discrimination and constitutional violations imposed on [him]." (*Id.*).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

Plaintiff asserts the following claims against Defendants: Title VII and § 1981 race discrimination claims (Count One), Title VII and § 1981 retaliation claims (Count Two), and § 1983 claims against Commissioner Hamm in his official capacity as the ADOC Commissioner (Count Three). (Doc. # 1).

In their Motion to Dismiss, Defendants assert several grounds for why their motion is due to be granted. (Doc. # 10). First, they assert that Plaintiff's Complaint is a "shotgun pleading." (*Id.*). Second, they argue that Plaintiff's Title VII claims against Donaldson and Commissioner

Hamm are due to be dismissed. (*Id.*). Third, they assert Eleventh Amendment immunity bars Plaintiff's claims against the ADOC, Donaldson, and Commissioner Hamm. (*Id.*). Finally, they assert qualified immunity bars Plaintiff's claims against Commissioner Hamm in his individual capacity. (*Id.*).

For the reasons explained below, the court finds that the Complaint is a shotgun pleading that must be amended for Plaintiff's claims to proceed. And, for the sake of promoting efficiency, narrowing the issues, and avoiding duplicative motions, the court addresses Defendants' other arguments, as well.

### A.    Shotgun Pleading

Shotgun pleadings violate Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "failing to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

There are four basic categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland*, 792 F.3d at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The key question

in determining whether a pleading is deemed "shotgun" is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

Here, Defendants assert that Plaintiff's Complaint qualifies as a shotgun pleading for three reasons. First, as currently pleaded, each count of Plaintiff's Complaint incorporates all paragraphs preceding it. Second, Plaintiff's Complaint contains only conclusory allegations. And third, Plaintiff's Complaint does not specify which Defendant is responsible for what alleged actions or inactions.

As to the incorporation of multiple preceding paragraphs, the typical shotgun complaint contains several counts, "each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Funds, LLC v. Spear, Leeds, & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Here, Plaintiff's Complaint contains three causes of action. (Doc. # 1). In each count, Plaintiff "adopts and re-alleges" the previous paragraphs "as if fully set forth herein." (*Id.* ¶¶ 20, 28, 31). Therefore, Counts II and III incorporate not only every previous factual allegation but also the paragraphs defining the cause of action in each count before it.

The problem with a pleading like this is that it forces both the court and Defendants to guess what conduct the various counts are referencing because the pleading alludes to "everything that the plaintiff has previously mentioned anywhere in the complaint." *United States ex rel. Wallace v. Exactech, Inc.*, 2020 WL 4500493, at *8 (N.D. Ala. Aug. 5, 2020) (quoting *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.5 (11th Cir. 2020)). The court notes that incorporating previous counts and large sections of a pleading into subsequent counts, by itself, does not

necessarily render a pleading "shotgun." *Weiland*, 792 F.3d at 1324. But, incorporating large swaths of allegations *and* "rolling" counts into other counts "down the line" can do just that. *Id.* Therefore, Plaintiff's failure to precisely identify the facts relevant to each count and rolling those allegations from one count to another makes his Complaint a shotgun pleading.

Similarly, Plaintiff's Complaint is a shotgun pleading of the second type because it contains "conclusory" and "vague" facts that continue to present a "moving target of general allegations." *Id.*; *United States ex rel. Musachia v. Pernix Therapeutics, LLC*, 2021 WL 2826429, at *4-5 (N.D. Ala. July 7, 2021). For example, Count One alleges Title VII and § 1981 claims and provides, "Plaintiff avers that Defendant has a habit and/or practice of unfairly discipling African Americans" (Doc. # 1 ¶ 22) and "Plaintiff avers he has been subjected to other adverse actions because of his race, African-American." (*Id.* ¶ 23). But the Complaint does not specify which Defendant Plaintiff claims does so, what any Defendant's alleged habit is, how African Americans have allegedly been disciplined, or what other adverse actions Plaintiff has been subjected to. The same issue arises in Counts Two and Three. In Count Two, Plaintiff alleges that "[t]he Defendant has a habit and/or a practice of retaliating against employees that engage in protected activity." (*Id.* ¶ 29). Again, Plaintiff has failed to specify which Defendant he is referring to, what any Defendant's alleged habit is, or to identify any protected conduct or instances of any Defendant retaliating against employees who engage in protected activity. And in Count Three, Plaintiff alleges that Commissioner Hamm "participated in constitutional violations of Plaintiff's rights in that he discriminated and retaliated against Plaintiff and allowed to be created a racially discriminatory work environment for Plaintiff." (*Id.* ¶ 32). Plaintiff does not allege any facts regarding how Commissioner Hamm discriminated and retaliated against him or how Commissioner Hamm created a racially discriminatory work environment. Therefore, all of these

conclusory statements fail to put Defendants on notice of "the specific claims against [them] and the factual allegations that support those claims." *Weiland*, 792 F.3d at 1325.

And finally, Plaintiff's Complaint is a shotgun pleading of the fourth type because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. Plaintiff has named three defendants: Donaldson, the ADOC, and Commissioner Hamm, but he has failed to specify in Counts One and Two which Defendant is responsible for what alleged actions or inactions. For example, Count One asserts discrimination claims under Title VII and § 1981 and Count Two asserts retaliation claims under Title VII and § 1981. (Doc. # 1 ¶¶ 20-29). But, neither Count One nor Count Two specifies which Defendant acted in a particular manner. Because of this failure, Plaintiff has not put Defendants on notice of what they allegedly did or failed to do and which claims are brought against them. This makes it impossible for them to answer to the conduct being alleged.

The Eleventh Circuit has shown "little tolerance for shotgun pleadings." *Shabanets*, 878 F.3d at 1295. "A district court has the 'inherent authority to control its docket and ensure the prompt resolutions of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Id.*; *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). But, the pleading party should have at least once chance to remedy such deficiencies before a court dismisses with prejudice an action on shotgun pleading grounds. *Shabanets*, 878 F.3d at 1295; *Jackson*, 898 F.3d at 1358. Therefore, the court will grant Plaintiff the opportunity to file an amended complaint against Defendants that remedies these pleading deficiencies.

**B.    Defendants' Additional Arguments**

In addition to arguing that the Complaint is a shotgun pleading, Defendants contend that

(a) Plaintiff's Title VII claims against Donaldson and Commissioner Hamm are due to be dismissed, (b) Eleventh Amendment immunity shields Defendants from liability, and (c) qualified immunity shields Commissioner Hamm from liability in his individual capacity. (Doc. # 10). The court addresses each of these arguments, in turn.

### a.    Title VII Claims

Under Counts One and Two, Plaintiff asserts Title VII claims for race discrimination and retaliation, respectively. As discussed above, Plaintiff does not specify which Defendant or Defendants against whom he asserts these Title VII claims. Thus, Defendants construe the claims to be brought against all three of them: the ADOC, Donaldson, and Commissioner Hamm. In their Motion to Dismiss, Defendants assert that Donaldson and Commissioner Hamm are not proper parties to the Title VII claims and should be dismissed. The court agrees.

"Title VII makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1288 (11th Cir. 2003) (quoting 42 U.S.C. § 2000e-2(a)(1)). Under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). "The term 'person' includes one or more individuals, governments, governmental agencies . . . ." 42 U.S.C. § 2000e(a).

A Title VII workplace discrimination claim can only be brought by an employee against his employer. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). To determine who is the employer, the courts ask, "who (or which entity) is in control of the fundamental aspects of the employment relationship that gives rise to the claim." *Peppers v. Cobb*

*Cnty., Ga.*, 835 F.3d 1289, 1297 (11th Cir. 2016) (quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999)). Courts will consider the totality of the employment relationship as well as the following specific factors: "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id.* (citations omitted).

Pursuant to Alabama law, the ADOC is comprised of correctional facilities or prisons (like Donaldson), Ala. Code § 14-2-1(7)(a), and "shall have all of the duties, responsibilities, authority, power, assets, liabilities, property, funds, appropriations, contractual rights and obligations, property and personnel," Ala. Code § 14-1-1.1, which includes the authority to appoint officers and other employees. Ala. Code § 14-2-1(7)(a). The ADOC is "headed by and under the independent direction, supervision, and control of a Commissioner of Corrections, hereinafter referred to as 'the commissioner,' who shall be appointed by and serve at the pleasure of the Governor." Ala. Code § 14-1-1.3.

The court finds that for purposes of any Title VII claim here, Plaintiff's employer is either the ADOC or Commissioner Hamm. Donaldson cannot be Plaintiff's employer because it has no authority over him as it is merely his workplace. It is Commissioner Hamm who heads the ADOC and who has the authority to appoint and dismiss ADOC employees; Donaldson has no such power.

Although either the ADOC or Commissioner Hamm may be considered Plaintiff's employer, the court finds that Commissioner Hamm should also be dismissed from Plaintiff's Title VII claims because the claims against him are redundant. As the Eleventh Circuit has held, "official capacity suits are the 'functional equivalent' of claims against the entity that employs the official and, therefore, no longer necessary because the entity can be sued directly." *Jones v. Bessemer Bd.*

*of Educ.*, 2020 WL 3440482 (N.D. Ala. June 23, 2020) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Moreover, "[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Id.* at 772. Therefore, to the extent that Plaintiff asserts claims against both the ADOC and Commissioner Hamm, the claims brought against Commissioner Hamm are due to be dismissed for at least two possible reasons. First, if the claims against Commissioner Hamm are asserted against him in his official capacity, the court finds that such claims are duplicative of Plaintiff's claims against the ADOC. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as against the entity."). And second, if the claims against Commissioner Hamm are asserted against him in his individual capacity, they are also due to be dismissed as "[i]ndividual capacity suits under Title VII are [] inappropriate" because there is no individual liability under Title VII. *Busby*, 931 F.2d at 772.

For all of these reasons, Plaintiff cannot pursue his Title VII claims against Donaldson and Commissioner Hamm.

### b.    Eleventh Amendment Immunity

As to Plaintiff's § 1981 and § 1983 claims, the ADOC, Donaldson, and Commissioner Hamm (sued in his official capacity) are entitled to Eleventh Amendment immunity because the State of Alabama has not waived its Eleventh Amendment immunity for § 1981 and § 1983 claims, and Congress has not abrogated this immunity with regard to suits for monetary damages by private individuals pursuant to § 1981 and § 1983.

The Eleventh Amendment insulates a state from suit in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp.*

*v. Holderman*, 465 U.S. 89, 98-100 (1984). In addition to protecting states from suit by private individuals in federal court, Eleventh Amendment immunity has been extended to state agencies and instrumentalities, and state officials. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). Because the ADOC is a state agency and Donaldson is a correctional facility under the ADOC, they are considered arms of the state. Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

Moreover, the Supreme Court has held that neither § 1981 nor § 1983 abrogate Eleventh Amendment immunity. *Id.* at 64. Therefore, Plaintiff's § 1981 and § 1983 claims against the ADOC and Donaldson are due to be dismissed because they are state agencies that are entitled to Eleventh Amendment immunity. And, "because a suit for damages against a state official in his official capacity is, in substance, a suit against the state treasury," state officials like Commissioner Hamm, "are also entitled to Eleventh Amendment immunity from such liability in their official capacities." *Toney v. State of Ala.*, 784 F. Supp. 1542, 1545 (M.D. Ala. 1992). Thus, any § 1981 and § 1983 claims for money damages against Commissioner Hamm in his official capacity are also due to be dismissed.

### c.    Qualified Immunity

Although state officials acting in their official capacities are entitled to Eleventh Amendment immunity, "[s]tate officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment." *Harden*, 760 F.2d at 1164. Plaintiff's Complaint clarifies that "Hamm as Commissioner of Alabama Department of Corrections is *sued in his individual, as well as official capacity* as representative of William E.

Donaldson Facility." (Doc. # 1 ¶ 4) (emphasis added). However, in Count Three, which asserts §
1983 claims against Commissioner Hamm, Plaintiff alleges, "[a]t all times material to the
complaint, Defendant Hamm *was acting in his official capacity* as an official of the State of
Alabama Commissioner of the Department of Corrections." (*Id.* ¶ 33) (emphasis added). Plaintiff's
Complaint does not allege that Commissioner Hamm was acting in his individual capacity. Of
course, to the extent that Plaintiff may have intended to assert his claims against Commissioner
Hamm in his individual capacity, such a claim implicates the doctrine of qualified immunity.

  "The doctrine of qualified immunity protects government officials 'from liability for civil
damages insofar as their conduct does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231
(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In order to receive qualified
immunity, the public official must first prove that he was acting within the scope of his
discretionary authority when the allegedly wrongful acts occurred." *Crenshaw v. Lister*, 556 F.3d
1283, 1289 (11th Cir. 2009) (internal quotations omitted). An official who was acting in the scope
of his discretionary authority is entitled to qualified immunity unless the plaintiff can show that
the official (1) violated a constitutional or statutory right; *and* (2) that the constitutional or statutory
right was "clearly established" at the time of the official's alleged misconduct. *Pearson*, 555 U.S.
at 232.

  Although Defendants assert that Commissioner Hamm is entitled to qualified immunity for
the claims asserted against him in his individual capacity, because of Plaintiff's pleading
deficiencies, the court cannot make that determination at this time.

## IV.    Conclusion

For the reasons explained above, Defendants'[2] Motion to Dismiss (Doc. # 9) is due to be granted in part and denied in part. A separate order in accordance with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this January 8, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

---

[2] In his response to Defendants' Motion to Dismiss, Plaintiff contends "[t]he intent of the original complaint was to contain (1) defendant" but that "upon the plaintiff's interaction with the clerk of the court . . . was told that the clerk thought there were two defendants and had set the complaint up as such." (Doc. # 13 at 4). Plaintiff also contends that he was "further told that Plaintiff should serve it as if there are two defendants, serving Commissioner Hamm as a defendant separately, since his name did appear in the style of the document." (*Id.*). Despite these contentions, the court cannot decipher which of the three named Defendants Plaintiff meant to name as the sole defendant, although it appears the proper defendant would be his employer, the ADOC. As currently pleaded, however, the court construes the instant action to be brought against the three named Defendants and directs Plaintiff to include only one defendant in his amended complaint if that is in fact his intention.