UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J. CORBIN DOUGLAS TUNSTALL, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  2:24-cv-01504-RDP |
| | } | |
| ALABAMA DEPARTMENT OF CORRECTIONS, | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Reconsideration of the Granting of Defendant's Summary Judgment Motion. (Doc. # 58). After careful review, and for the reasons explained below, Plaintiff's Motion is **DENIED**.

**I.      Background**

This case arises from the tragic death of Inmate Kenneth Gilchrist at the William E. Donaldson Correctional Facility on October 11, 2021. Inmate Gilchrist was stabbed during an altercation with another inmate and denied timely medical attention. Rather than ensuring that Inmate Gilchrist received medical attention, security footage showed Plaintiff J. Corbin Douglas Tunstall, a Black male who served as a Correctional Sergeant for Defendant Alabama Department of Corrections ("ADOC"), directing that Inmate Gilchrist be placed in the barbershop in violation of a standing directive issued August 18, 2021. (Doc. # 41-2 at 2). Despite knowing that Inmate Gilchrist was in distress, Plaintiff made no effort to obtain medical assistance for him. (Doc. # 41-5 at 20). Instead, over the course of around thirty minutes, Plaintiff repeatedly walked past the barbershop of about thirty minutes while Inmate Gilchrist writhed on the floor. (Doc. # 41-7). Inmate Gilchrist later died of his stab wound. (Doc. # 41-5 at 5).

ADOC placed Plaintiff on mandatory leave two days after Inmate Gilchrist's death and initiated pre-dismissal proceedings against him. (Doc. # 42-1 at 7, 11). Before those proceedings concluded, Plaintiff resigned on February 7, 2022. (*Id.* at 10). Plaintiff filed a charge with the EEOC after his resignation, (Doc. # 3-1), and subsequently brought this action.

Sergeant Shaun Mechalske is a White male who was the senior sergeant on duty. He also admitted to directing that Inmate Gilchrist be placed in the barbershop. (Doc. # 41-5 at 16-19). When ADOC discovered Mechalske's involvement in Inmate Gilchrist's death, he was placed on mandatory leave on April 11, 2022 and formally dismissed, effective July 29, 2022. (Doc. # 42-2 at 2-4, 9).

Plaintiff's Second Amended Complaint asserted three claims against ADOC: (1) racial discrimination under Title VII, (2) retaliation under Title VII, and (3) violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. (Doc. # 28 ¶¶ 14-22). On April 28, 2026, the court granted ADOC's Motion for Summary Judgment on all three claims. (Doc. # 56).

On Plaintiff's racial discrimination claim, the court found that Plaintiff could satisfy neither the *McDonnell-Douglas* framework nor the "convincing mosaic" standard. His discrimination theory rested entirely on the difference in timing between his discipline and Mechalske's. The court concluded that this timing disparity was directly attributable to Plaintiff's own conduct: he said nothing about Mechalske's involvement during his October 11, 2021 interview with investigators and declined to give any statement at all when interviewed again on February 3, 2022. (Doc. # 41-5 at 3, 15). ADOC learned of Mechalske's involvement through other witnesses and acted against him promptly upon doing so. (*Id.* at 16-19). In all material respects (mandatory leave, pre-dismissal proceedings before the same warden, findings of misconduct, and no recommendation for reemployment), the two officers were treated the same. (Docs. # 42-1 at 1;

42-2 at 1-4).

On the retaliation claim, the court found that Plaintiff's only pre-resignation protected activity consisted of informal conversations with Captain Johnson expressing a general belief that discipline was being applied unevenly. (Doc. # 41-3 at 38:16-39:1, 41:6-21). There was no evidence those conversations were ever communicated to the decisionmakers who initiated or oversaw Plaintiff's disciplinary proceedings, and a decisionmaker cannot retaliate against an employee for activity unknown to her. The court further found that Plaintiff failed to establish a constructive discharge, as his own deposition testimony and resignation letter, which described his time with ADOC as "a pleasure" and "a rewarding learning experience," were fundamentally inconsistent with working conditions so intolerable as to compel resignation. (*Id.* at 27:1-9; Doc. # 42-1 at 10).

As to § 1983, the court found two independent threshold bars to that claim. First, ADOC, as a state agency, is not a "person" subject to suit under § 1983. Second, ADOC is immune from such suit under the Eleventh Amendment.

On May 26, 2026, Plaintiff filed the instant Motion for Reconsideration. (Doc. # 58). Plaintiff argues that the court erred in two principal respects. First, he contends the court failed to view Sergeant Mechalske's admission of his role in directing the barbershop placement in the light most favorable to Plaintiff. Second, he contends the court wrongly faulted him for not disclosing Mechalske's involvement to investigators on October 11, 2021 because the barbershop placement had not yet been identified as a rule violation. As the court explains below, neither assertion is persuasive.

## II.    Standard of Review

The grant or denial of a motion to reconsider rests in the discretion of the district court.

3

*Chapman v. AI Transp.*, 229 F.3d 1012, 1023-24 (11th Cir. 2000). Such motions are a disfavored, extraordinary remedy and should be employed sparingly. A motion to reconsider is not a vehicle to relitigate old matters, assert novel arguments, or present evidence that could have been raised previously. *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Reconsideration is appropriate only when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. *Busby v. JRHBW Realty, Inc.*, 2006 WL 8446617, at *1 (N.D. Ala. 2006).

### III.    Analysis

Plaintiff's Motion raises no intervening change in controlling law and has presented no new evidence. (*See generally* Doc. # 58). The Motion instead re-argues factual and legal contentions that were squarely before the court on summary judgment and that the court considered and rejected. To the extent Plaintiff raises arguments not presented in his summary judgment briefing (and, to be clear, there are none), those arguments were waived and provide no basis for reconsideration. *Michael Linet, Inc.*, 408 F.3d at 763. Accordingly, Plaintiff's motion can succeed, if at all, only by demonstrating a clear error or manifest injustice in the court's prior ruling. *See Busby*, 2006 WL 8446617, at *1. It does not.

Plaintiff first argues the court failed to apply the convincing mosaic standard correctly. Under the convincing mosaic standard, a triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). That evidentiary picture may include suspicious timing or ambiguous statements, systematically better treatment of similarly situated

4

employees, pretext, or some combination of those. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023) (citing *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)). Critically, however, this standard requires "enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023). The court applied this framework in its Memorandum Opinion on ADOC's Motion for Summary Judgment and found the record insufficient. (Doc. # 56).

Plaintiff also contends the court erred by failing to view the evidence in the light most favorable to him with respect to Sergeant Mechalske's admission that he directed the placement of Inmate Gilchrist in the barbershop. (Doc. # 58 at 2). But the court's opinion explicitly acknowledged that Sergeant Mechalske admitted to directing the barbershop placement, that Officer Greer corroborated that account, and that ADOC ultimately initiated the same disciplinary proceedings against Sergeant Mechalske as it had against Plaintiff when it discovered Mechalske's involvement. (Doc. # 56 at 7-8, 11-12, 15-16).[1] The issue was not whether Mechalske bore some responsibility for placing Inmate Gilchrist in the barbershop – the record reflects he did. Rather, the questions is whether the sequence and timing of discipline against the two officers permitted an inference of racial discrimination. The court concluded it did not because that timing was explained by Plaintiff's own decision to withhold information about Mechalske's involvement. (Doc. # 41-5 at 3, 15).

Plaintiff's Motion also makes passing reference to Mechalske's prior disciplinary history, suggesting that Mechalske's twelve prior rule violations demonstrate a pattern of disparate treatment. (Doc. # 58 at 3-4). Plaintiff did not develop this argument in his summary judgment briefing in any meaningful way, and he cannot use a motion to reconsider as an opportunity to

---

[1] Plaintiff acknowledges as much in his motion, conceding that this evidence "was provided to this Honorable Court and the Court makes use of in its decision." (Doc. # 58 at 2).

flesh out theories he failed to adequately present the first time around. *Michael Linet, Inc.*, 408 F.3d at 763. In any event, the disciplinary history argument would not change the outcome. The relevant inquiry is whether Plaintiff and Mechalske were treated differently with respect to the *same* incident. On that question, the record reflects they were not: both were investigated (Docs. # 41-5 at 20; 42-2 at 10-12), both faced pre-dismissal proceedings before the same warden (Docs. # 42-1 at 3-6; 42-2 at 14-16), both were found to have neglected their duties (Docs. # 41-5 at 20; 42-2 at 16), and neither was recommended for reemployment (Docs. # 42-1 at 1; 42-2 at 1).

Plaintiff also argues that the court wrongly faulted him for failing to disclose Sergeant Mechalske's involvement to investigators on October 11, 2021 because the barbershop placement had not yet been identified as a rule violation. This argument lacks merit. On August 18, 2021, nearly two months before the incident, Correctional Captain LaTonya Scott transmitted the warden's directive providing that "no inmates [were] to be placed in the barbershop following an incident in which they [had been] involved," and that failure to comply would result in "corrective action." (Doc. # 41-2 at 2). Plaintiff acknowledged receipt of this directive by responding "10-4." (*Id*. at 1). Inmate Gilchrist was involved in an altercation on October 11, 2021. Plaintiff admitted that he was the one who directed that Gilchrist be placed in the barbershop, which violated the directive. (Docs. # 41-2 at 2; 41-7). The court acknowledges that Mechalske made a similar admission about himself. (Doc. # 58 at 2). So, while the record reflects that both Plaintiff and Mechalske "admitted" they were the one who directed that Inmate Gilchrist be placed in the barbershop, this does not move the needle on summary judgment. Did they both take that action? Did Plaintiff simply cover for Mechalske when he was interviewed and took personal responsibility? Regardless, and whatever happened, they both took responsibility and faced disciplinary action.

Further, nothing about those competing narratives changes the undisputed fact that Plaintiff acknowledged at his pre-dismissal conference ADOC policy required that an inmate appearing to be under the influence (like Inmate Gilchrist) be taken to the infirmary. (Doc. # 41-2 at 4-6). So, even if (contrary to his admission) Plaintiff did not issue the order, he still knew he was to take Gilchrist to the infirmary. He did not do that. These undisputed facts independently confirm his violation of that directive was intentional. The rule was neither ambiguous nor unknown to Plaintiff at the time of the incident.

Plaintiff's disagreement with the court's conclusions on summary judgment does not constitute clear error or manifest injustice. *See Busby*, 2006 WL 8446617, at \*1. Plaintiff's Motion asks the court to reweigh evidence and draw different inferences, which is not the purpose of reconsideration and which the court declines to do. The court recognizes that Plaintiff feels strongly that the outcome of this case was unjust. If Plaintiff believes the court erred in granting summary judgment for ADOC, the proper vehicle for that challenge is an appeal to the Eleventh Circuit, not a motion to reconsider before this court. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(B).

## IV.   Conclusion

For all the above reasons, Plaintiff's Motion for Reconsideration of the Granting of Defendant's Summary Judgment Motion (Doc. # 58) is **DENIED**.

**DONE** and **ORDERED** this June 9, 2026.

**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE